UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

McDade, Smith, Gould,
Johnston, Mason & Co., §
                              §
         Plaintiff,           §
                              §
versus                        §          Civil Action H-05-0994
                              §
CB Richard Ellis and          §
American Realty Trust,        §
                              §
         Defendants.          §

# Opinion on Summary Judgment

1. *Introduction.*

    A broker says that he had an agreement with another broker to split a commission from the sale of land. Because there was no agreement, the plaintiff loses.

2. *Background.*

    William McDade is a broker at McDade, Smith, Gould, Johnston, Mason & Company, a commercial real-estate firm. Brendan Lynch is a broker for CB Richard Ellis and worked with McDade on previous deals. McDade says that Brendan Lynch contacted him in November 2004.

    McDade and Brendan talked about a property owned by American Realty Trust that McDade had previously tried, but failed, to sell for American. McDade sent the information that he had on it to Ellis. Another broker at Ellis – Tom Lynch – discussed fees with McDade. Tom suggested dividing a 6% commission, but McDade told Tom that American would not pay 6%. He says that they agreed orally that McDade would look to American for its commission and Ellis would look to its client, the buyer, for its commission.

    On November 18, 2004, Tom contacted McDade's firm on behalf of the potential buyer with an offer to purchase at $1.75 per square foot. The offer indicated that

American would pay a 3% commission to McDade, but neither McDade nor Ellis had an agreement with American for *any* amount of commission. The offer also included a 3% commission for Ellis, resulting in an aggregate commission of 6% for the brokers on either side of the deal.

McDade relayed the offer to American, and on November 23, American countered at $2.19 per square foot with no commission for Ellis and a closing date of December 20, 2004. On December 1, the buyer responded with $1.90 per square foot with a 3% commission to McDade. McDade says that American then indicated that it would accept nothing lower than $2.19, and Ellis told McDade that its client would go no higher than $1.90. McDade believed they had reached an impasse.

On January 8, 2005, American – now represented by Ellis through a third Ellis broker – contracted to sell the property to the same proposed buyer – also represented by Ellis – at the same price per square foot that Ellis had told McDade that it would not pay – $2.19. Instead of a December closing, they would close in February 2005. American paid Ellis a 3% commission. The buyer paid none.

McDade sued Ellis for breach of contract and unjust enrichment. It sued American for tortious interference with its agreement to share a commission with Ellis. American has been dismissed.

3.   *Breach.*

McDade says that Ellis agreed that American would pay his commission and the buyer would pay Ellis's commission. McDade claims that Ellis breached this contract when it accepted the commission that American paid it for a sale to the same buyer at the same price per square foot as the one outstanding at the time that they stopped negotiating.

Ellis says that there was no contract because there was no consideration, acceptance, or a writing. This was a business relationship, however, and it can be implied that McDade expected compensation for his efforts. The expectation of compensation

shows consideration.  The negotiations between McDade and Ellis also indicate acceptance by the two brokers of the commission payment plan.

McDade and Ellis had no written agreement.  McDade says that it may still get the commission that American paid Ellis because they had an oral agreement.  Assuming that they did, neither disputes that it required them to seek commission from their respective clients.  By its own terms, it was not an agreement to split the commission.  They agreed to seek commission directly from their principals rather than dividing one principal's payment between themselves.

At the time of the brokers' agreement, McDade's principal was American.  McDade agreed with Ellis to get 100% of its commission from American if their negotiations proved successful.  As a condition precedent to this agreement, the principals – American and Ellis's buyer – must have consummated a contract of sale for the property; they did not.  When the principals abandoned their negotiations, the basis of the brokers' agreement disintegrated.

To McDade's dismay, the principals later contracted for the property on similar terms but with Ellis in McDade's former position as American's agent.  Ellis got "100%" of American's commission instead of McDade.  Because of the similarity of the terms of the failed prior contract and the later successful contract, McDade now attempts to revive the brokers' agreement.  It cannot.

The contract executed by Ellis on behalf of American was not the same sale that McDade attempted to procure.  The two are distinguished by 3% commission on a $12.5 million sale – a substantial difference to the buyer, which must indirectly pay all commissions through the seller's adjustment of the selling price to cover any commission it agrees to pay.  Because the failed sale was set to close in December and the completed sale closed in February, the tax consequences of the two deals were also different.  The buyer's primary purpose of acquiring the tract was the resulting tax benefit.

McDade asks the court to find a breach of a contract that was never formed.  Ellis did not agree to share commission; it agreed only that McDade would get 100% of the commission paid by American if their deal went through.  It did not orally agree to

redistribute any future commission paid to it by American in a different deal. Ellis did not have an agreement with McDade to breach.

4.   *Unjust Enrichment.*

McDade also claims that Ellis will be unjustly enriched if it is allowed to keep the commission paid by American. McDade does not dispute that neither he nor his firm had an *exclusive* listing agreement with American. At the time that American contracted to sell the land, American was not using McDade as its broker.

McDade could have no reasonable expectation of benefitting from a sale between American and Ellis's other client without American's voluntary cooperation. Even if it expected to profit from a future sale by American to a different buyer, the absence of an exclusive listing agreement proves the expectation to be unjustified. Ellis has no obligation to remedy McDade's failure to secure representation of the property held by American.

5.   *Conclusion.*

The Ellis and McDade agreement depended on the creation of a proposed contract between their principals to be effective. Although it was on similar terms, the contract of sale that American eventually executed was the result of a separate set of negotiations that did not involve McDade; it was a different contract on different terms than those proposed earlier during McDade's representation. Ellis will prevail, and McDade takes nothing.

Signed August 16, 2006, at Houston, Texas.

_____
Lynn N. Hughes    USDJ
United States District Judge